IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GAIL MARCH, ) | |
| ) | |
| Claimant, ) | No. 14-cv-9593 |
| ) | |
| v. ) | Jeffrey T. Gilbert |
| ) | Magistrate Judge |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM OPINION AND ORDER

Claimant Gail March ("Claimant") seeks review of the final decision of Respondent Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner"), denying Claimant's applications for a period of disability and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act") and for Supplemental Security Income under Title XVI of the Act. Pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, the parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment. [ECF No. 4.] Claimant has moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. [ECF No. 10.] The Commissioner has done likewise. [ECF No. 14.] For the reasons stated below, Claimant's motion for summary judgment is granted, and the Commissioner's motion for summary judgment is denied. The decision of the Commissioner is reversed, and the case is remanded to the Social Security Administration ("the SSA") for further proceedings consistent with this Memorandum Opinion and Order.

# I. PROCEDURAL HISTORY

On June 28, 2012, Claimant filed applications for a period of disability, DIB, and SSI, alleging a disability onset date of May 1, 2012. (R. 235-247.) The claims were denied initially in January, 2013, and upon reconsideration on May 17, 2013. (R. 176, 181-188.) On June 12, 2013, Claimant requested a hearing before an Administrative Law Judge ("the ALJ"). (R. 190-192.) The requested hearing was then held on January 14, 2014. (R. 56-114.) At that hearing, Claimant, who was represented by a non-attorney representative, appeared and testified. *Id.* Claimant's mother also appeared and testified, as did a vocational expert ("the VE") and Dr. Ellen Rozenfeld. *Id.*

On February 28, 2014, the ALJ issued a written decision. (R. 26-50.) In the decision, the ALJ went through the five-step sequential evaluation process. At step one, the ALJ found Claimant had not engaged in substantial gainful activity ("SGA") since his alleged onset date. (R. 28.) At step two, the ALJ found Claimant had the severe impairments of affective disorder, residuals of a cerebrovascular accident, seizures, status post-skull/head trauma, anxiety, history of speech impairment, and status post left humeral fracture. (R. 29.) At step three, the ALJ found Claimant did not have an impairment or a combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). *Id.*

Before step four, the ALJ concluded that Claimant had the residual functional capacity ("RFC") to do light work. (R. 30.) The ALJ found that Clamant could (1) understand, remember, and carry out short, simple instructions and tasks, (2) make simple work related decisions, (3) use judgment, (4) perform at a consistent pace without an unreasonable length or

total number of rest breaks; (5) interact appropriately with supervisors to accept instructions or respond to criticism, (6) get along with coworkers/peers without being a distraction; (7) respond appropriately to occasional and routine changes in the work setting; and (8) travel independently and use public transportation. (R. 31.) The ALJ also determined that Claimant could frequently climb stairs and ramps. (R. 30.) The ALJ found that Claimant should never: (1) climb ladders, ropes, or scaffolds; (2) engage in commercial driving; (3) be exposed to unprotected heights, dangerous moving machinery, and open dangerous conditions; and (4) perform face-paced assembly line type work. (R. 30-31). The ALJ further limited Claimant to jobs that involve only: occasional contact on a short, superficial basis with the public; short, brief contact with workers; and no joint projects/tasks with coworkers. (R. 31.) Based on this RFC, the ALJ determined at step four that Claimant could not perform any past relevant work. (R. 47.) Finally, at step five, the ALJ found Claimant to be disabled as of February 14, 2014 through the date of his decision. (R. 49.) The ALJ, however, also found Claimant not disabled prior to that date. *Id.* Specifically, the ALJ found that, prior to February 14, 2014, Claimant could have worked as a hand packer, sorter, or assembler. (R. 48-49.)

Claimant sought review of the ALJ's decision. *See* R. 3-5. On September 19, 2014, the Social Security Appeals Council denied the request. *Id.* That denial made the ALJ's opinion the final decision of the Commissioner. *Id. See also Nelms*, 553 F.3d at 1097. Claimant now seeks review in this Court pursuant to 42 U.S.C. § 405(g). *See Haynes v. Baumhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## II. STANDARD OF REVIEW

A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel,* 530 U.S. 103, 106-07 (2000). A claimant then may

3

seek review of this final decision in the district court. *Id.* Judicial review is limited to determining whether the Commissioner's decision is supported by substantial evidence in the record and whether the ALJ applied the correct legal standards in reaching his decision. *Nelms v. Astrue,* 553 F.3d 1093, 1097 (7th Cir. 2009). The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). A "mere scintilla" of evidence is not enough. *Scott v. Barnhart,* 297 F.3d 589, 593 (7th Cir. 2002). Even when there is adequate evidence in the record to support the decision, however, the district court will not uphold the ALJ's findings if the ALJ did not "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue,* 516 F.3d 539, 544 (7th Cir. 2008). In other words, if the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *Villano v. Astrue,* 556 F.3d 558, 562 (7th Cir. 2009). Though the substantial evidence standard is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue,* 534 F.3d 663, 665 (7th Cir. 2008). The court may not, however, "displace the ALJ's judgment by reconsidering facts or evidence . . . ." *Elder v. Astrue,* 529 F.3d 408, 413 (7th Cir. 2008).

### III. ANALYSIS

Claimant argues that the ALJ failed to adequately develop the record and improperly weighed the various medical opinions in the record. The Court finds that the ALJ committed the first error. Because this error requires remand and will necessitate that the ALJ reweigh the

4

medical opinions after developing a full and fair record, the Court will not address whether the ALJ erred in evaluating the medical opinions in the record.

A.  **The ALJ Failed To Adequately Develop The Record.**

An ALJ has a duty to develop a full and fair record. *Nelms*, 553 F.3d at 1098. At a minimum, this obligation demands that an ALJ ensure the record has "enough information to assess the claimant's RFC and to make a disability determination." *Martin v. Astrue*, 345 F. App'x 197, 201 (7th Cir. 2009). Where a claimant does not have counsel, however, this duty is "enhanced." *Nelms*, 553 F.3d at 1098. In such a case, "the ALJ must 'scrupulously and conscientiously [ ] probe into, inquire of, and explore for all the relevant facts.'" *Id.* (quoting *Thompson v. Sullivan*, 933 F.2d 581, 585-86 (7th Cir. 1991)). Therefore, while a *pro se* litigant "must furnish some medical evidence to support [her] claim, the ALJ is required to supplement the record, as necessary, by asking detailed questions, ordering additional examinations, and contacting treating physicians and medical sources to request additional records and information." *Id.* (internal citation omitted). If an ALJ's failure to develop the record results in a significant and prejudicial omission, then remand is appropriate. *Nelms*, 553 F.3d at 1098.

Neither party in this case has addressed whether the heightened duty for a *pro se* claimant should apply. At the hearing, Claimant was represented by Kathleen Halloran. The hearing transcript identifies Halloran as "Attorney for Claimant" (R. 56-57), but the ALJ described her as "a non-attorney representative," (R. 26). This difference could be important. The Court respects that many non-attorney representatives may be effective advocates for claimants and does not intend to question whether Halloran served Claimant well in this case. But the fact remains that a non-attorney representative "lacks the training of an attorney and is not a substitute for an attorney." *Watkins v. Colvin*, 2014 WL 683849, at *9 (N.D. Ind. Feb. 21, 2014). That is why an

5

ALJ still is required to secure a valid waiver of a claimant's right to counsel when the claimant is represented by a non-attorney representative. *Stepro v. Astrue*, 2012 WL 967089, at *4 (S.D. Ind. Mar. 21, 2012); *Schramm v. Astrue*, 2011 WL 1297285, at *3 (E.D. Wis. Mar. 31, 2011). Regardless, the Court need not decide whether the *pro se* standard applies because the ALJ's development of the record fell below even the minimum requirement.

During the hearing, the ALJ was told in unmistakable certain terms that the record before him was inadequate. Specifically, the ALJ heard testimony from Dr. Ellen Rozenfeld, an impartial psychological expert who reviewed Claimant's file. (R. 100-106.) And the ALJ ultimately gave her opinion great weight. (R. 45.) Yet the ALJ simultaneously ignored Dr. Rozenfeld's repeated, severe criticism of the record, which the doctor found to be so inadequate as to not permit a determination of Claimant's mental limitations.

Dr. Rozenfeld's testimony first reveals that there was a significant question as to the extent of Claimant's mental impairments. Almost as soon as Dr. Rozenfeld began testifying, she stated that there was "clearly [a] suggestion" in the medical evidence that Claimant had two listing impairments. (R. 101.) Dr. Rozenfeld later said that, "[w]ith regards to the cognitive functions, it may well" be that Claimant meets a listing. (R. 104.) Dr. Rozenfeld also said that she was uncertain as to whether Claimant had a moderate or a severe mental impairment. (R. 102.)

Although these issues were of crucial importance in determining whether Claimant was disabled, the record before the ALJ was devoid of the testing necessary to properly address them. At the beginning of her testimony, Dr. Rozenfeld bemoaned, "I have no testing in the file." (R. 101.) Dr. Rozenfeld then told the ALJ that certain tests—which Claimant had repeatedly requested in the past but that were not done—"clearly . . . would be helpful in terms of

documenting the level of severity of [Claimant's] memory impairment." (R. 102.) Dr. Rozenfeld further noted, "It is a shame that no one has done standardized testing on her, you know, either the DDS or whatever, in terms of doing a Wechsler memory scale since memory seems to be a level – an issue that is mentioned today and throughout the file." (R. 102.) Dr. Rozenfeld also seemed to be concerned about the lack of adequate testing to assess Claimant's speech ability. (R. 102-103.)

The holes in the record that resulted from the absence of testing were not minor. Instead, they were so significant that Dr. Rozenfeld was incapable of providing a medical opinion that addressed the dispositive issues mentioned above. For instance, Dr. Rozenfeld concluded that she could not "state based on the evidence in the file" whether Claimant has a moderate or severe impairment in her memory. (R. 102.) With respect to Claimant's ability to perform routine tasks, Dr. Rozenfeld determined that the objective medical evidence would "seem" to show that she could perform routine tasks. *Id.* But she also said "given [Claimant's] testimony," it "sounds like" such tasks "would be" precluded. *Id.* When asked by the ALJ whether Claimant met any listing, Dr. Rozenfeld stated that "in the absence of any kind of formal testing, it's hard to assess severity." (R. 104-105.) This answer was followed by the most crucial series of questions and answers during Dr. Rozenfeld's testimony:

> Q. All right. Does that leave you -- if you were asked to do a mental residual functional, would you be able to complete such a form with regard to this claimant?
>
> A. Well, I would be very uncomfortable. I would hate to sit here and say she's capable of simple, routine tasks, and *I really don't know whether she is.*
>
> Q. Okay.
>
> A. I don't know whether she has the capacity for sustainability. I don't know whether she really has the capacity to take in information and retain it and recall it to then use later.

7

> Q. Okay.
>
> A, And I have to say, I don't know why DDS did not send her out for testing, given the --given the findings, given the diagnosis, given the waffling of the diagnosis possible. It should have been, in my opinion, worked up and just -- and documented.
> R. 105 (emphasis added).

This was the last substantive portion of Dr. Rozenfeld's testimony. After this exchange, the ALJ thanked the doctor, asked Claimant's representative if she had questions for Dr. Rozenfeld, and dismissed her from the stand. (R. 105.)

The Court finds no reason to disagree with Dr. Rozenfeld's assessment of the record. Dr. Rozenfeld is a medical professional. She reviewed Claimant's file. The ALJ found her to be very credible, giving her opinion great weight. When presented with this unambiguous testimony—in a case where the claimant was not represented by an attorney, the ALJ should have sought to further develop the record.

The second deficiency in the record has to do with the medical opinion of Dr. Steven Fox, an osteopathic doctor who examined and evaluated Claimant in December, 2013. It is undisputed that Dr. Fox opined that Claimant had severe limitations that would preclude her from any work. But the ALJ gave this opinion little weight. (R. 43.)

Although Dr. Fox stated that he administered a Neurobehavioral Cognitive Status Examination, R. 889-90, Claimant testified that she did not remember the exam (R 43, 90-91). The ALJ found this deeply concerning, saying that Claimant's testimony "significantly undermines the credibility of [Dr. Fox's] reported exam findings." (R. 43.) It is unclear exactly why the ALJ was so troubled by Claimant's testimony. Likely, the ALJ conjectured based on Claimant's testimony that Dr. Fox either did not administer the exam or did so in a deficient manner. Speculation in this regard would be improper. *See Griffo v. Colvin*, 2015 WL 8179941,

at *3 (N.D. Ill. Dec. 7, 2015). Regardless, though, the ALJ's discounting of the "credibility" of Dr. Fox's medical findings based solely on Claimant's poor memory demonstrates that the ALJ did not understand the basis for Dr. Fox's medical opinion.

Where the medical support for an opinion is not readily discernable, the proper approach is not to charge forward and attempt to evaluate the opinion without understanding its basis. Instead, in such an instance, an ALJ "has a duty to solicit additional information to flesh out" the opinion. *Barnett v. Barnhart*, 381 F.3d 664, 669 (7th Cir. 2004). If the ALJ in this case truly did not understand Dr. Fox's exam findings and how they supported his opinion, then he should have sought additional evidence to address this issue. By failing to do so and, instead, playing doctor, the ALJ erred.

Dr. Fox's opinion confused the ALJ in another respect as well. Dr. Fox used the terms mild, moderate, and severe without defining them or otherwise indicating that they have the meaning ascribed to those terms in the Social Security Regulations. As Dr. Rozenfeld explained, Dr. Fox did not define these terms and that made his opinion "difficult for [for] to make sense out of. (R. 101-102.) In fact, Dr. Rozenfeld was unable to determine whether Dr. Fox's findings showed that Claimant's condition "would fall within what we consider to be a severe level impairment, [or] a moderate level impairment of impairment." (R. 102.) The ALJ was similarly confused, characterizing Dr. Fox's opinion as vague and imprecise, relying on terminology . . . which [Dr. Fox] does not define and which cannot be quantified or easily correlated to severity for Social Security disability purposes." (R. 43.)

The ALJ's confusion is understandable. An ALJ, however cannot reject—or, in this case, give little weight to—a medical opinion simply because he is confused by it. *Day v. Astrue*, 334 F. App'x 1, 7 (7th Cir. 2009). Instead, "an ALJ is required to further develop the record if he

cannot understand the evidence." *Id.* In this case, the ALJ did not understand how severe Dr. Fox thought Claimant's impairments were and appeared to discount Dr. Fox's opinion based on this uncertainty. That is improper. Before doing so, the ALJ should have sought clarification on what Dr. Fox meant or interpreted his findings in manner so as to make any misunderstanding a harmless error.

The Commissioner offers several arguments that relate to the adequacy of the record. The Commissioner first asserts that there five medical opinions in the record—not including those rendered by Dr. Fox and Dr. Rozenfeld—that support the ALJ's decision. Even if these opinions supported the ALJ's RFC determination, the Court could not rely on them to paper over the deficiencies in the record. Of course, these opinions presumably were in the file reviewed by Dr. Rozenfeld but she found them to be inadequate to support a medical opinion. Moreover, three of these opinions were rendered after Claimant's first seizure and before four others, while the other two opinions were rendered before her penultimate seizure and final seizure, respectively. In other words, none of the medical opinions upon which the Commissioner relies evaluated Claimant's condition after all five seizures.

This is concerning. Dr. Rozenfeld's testimony clearly indicates that Claimant's seizures could and actually did impact her medical condition. *See, e.g.,* R. 103. Dr. Fox and Dr. Rozenfeld were the only medical professionals who evaluated Claimant's condition after all five seizures and then rendered medical opinions. Dr. Fox determined that Claimant had become significantly more limited than did the doctors who evaluated Claimant before her last seizure. And Dr. Rozenfeld thought Claimant might be more limited but acknowledged she was unable to provide a definite opinion given the deficiencies in the record. This gulf between the pre-seizure opinions and post-seizure opinions raises significant concerns about relying on the former to

establish Claimant's condition at the time of the hearing. Yet the Commissioner has failed to address this fundamental problem.

The Commissioner also argues that Dr. Rozenfeld provided an opinion that supported the ALJ's decision. As the above discussion demonstrates, that is not the case. Dr. Rozenfeld did not render opinions one way or the other on the crucial issues about which she was questioned.

The Commissioner further contends that ALJ could not have failed to develop a full and fair record because Claimant has the burden to produce evidence of her disability. As already illustrated, Claimant clearly produced some evidence of disability. And a claimant's burden in this regard does not absolve an ALJ of his responsibility to develop a full and fair record. *See Nelms*, 553 F.3d at 1098.

The Commissioner next asserts that whether the record was adequately developed is a "moot" issue because, after the hearing, Claimant got the sought-after tests herself. This argument misconstrues the concept of mootness. The injury that Claimant allegedly suffered was not the lack of testing, it was the supposedly wrongful denial of her claim for benefits. Therefore, the injury is not remedied—or rendered moot—by the fact that she later obtained the tests because she still has not been awarded benefits for the time period at issue in this case.

Finally, the Commissioner argues that the ALJ's failure to develop the record was not prejudicial, *i.e.* that it any omission was not significant. The Commissioner contends that even after Claimant underwent the requested tests, she did not obtain a medical opinion that analyzed them and concluded she was disabled. That fact, though, does not render these test results irrelevant.[1] The test results clearly evidence significant limitations in a variety of areas,

---

[1] By the time Claimant underwent this testing, the Commissioner represents, she had been found disabled by another ALJ. [ECF No. 15, at 11.] What impact the temporal gap between the relevant disability period and the date of the testing has on the relevance of this information is a matter for the ALJ to determine on remand.

including memory and speech. (R. 900-911.) At a minimum, their inclusion in the record could impact the weight to be given to the other medical opinions that were before the ALJ. Further, to the extent that the ALJ cannot adequately assess Claimant's condition on remand without even more tests or additional medical opinions that evaluate the already conducted tests, he may have a duty to further develop the record.

The Commissioner's final contention with respect to prejudice is that the test results must be insignificant because Claimant submitted them to the Appeals Council but her appeal still was denied. In support of this theory, the Commissioner cites the Appeals Council's denial letter. This letter, however, is a form document that does not permit this Court to engage in any meaningful review of the Appeals Council's decision or the basis for it. The Court thus does not know whether the Appeals Council properly considered the test results. That means the Appeals Council's denial cannot establish that the test results were insignificant.

## IV. CONCLUSION

For the reasons stated above, Claimant's motion for summary judgment [ECF No. 10] is granted, and the Commissioner's motion for summary judgment [ECF No. 14] is denied. The decision of the Commissioner is reversed, and the case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

It is so ordered.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated: August 3, 2016